UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DESIGN FURNISHINGS, INC., a
California corporation,

       Plaintiff,

   v.

ZEN PATH, LLC, a Nevada
limited liability company and
DOES 1 through 20, inclusive,

       Defendant.
_____/

NO. CIV. 2:10-2765 WBS GGH

MEMORANDUM AND ORDER RE:
MOTION FOR A PRELIMINARY
INJUNCTION

----oo0oo----

       Plaintiff Design Furnishings, Inc. ("DFI"), filed this action against defendant Zen Path, LLC ("Zen Path"), arising from defendant's notices of copyright infringement to eBay based on plaintiff's online sales of outdoor wicker patio furniture, which resulted in eBay taking action against plaintiff.  Plaintiff moves for a preliminary injunction against defendant pursuant to Federal Rule of Civil Procedure 65.  (Docket No. 12.)

I.  Factual and Procedural Background

1

1    Both plaintiff and defendant sell outdoor wicker patio
2    furniture made by the same Chinese manufacturer, Anji Yongcheng
3    Co. Ltd. ("Anji"), on eBay. (Hayes Decl. in Supp. of Pl. DFI's
4    App. re: P.I. pursuant to F.R.C.P. 65 ("Hayes Decl.") ¶ 2 (Docket
5    No. 14).) Darla Messenger, who works for defendant, states that
6    she designed the furniture[1] for defendant.[2] (Messenger Decl. in
7    Opp'n to DFI's Mot. for a P.I. ("Messenger Decl. II") ¶¶ 3-15
8    (Docket No. 22).) The furniture constitutes 75 to 80 percent of
9    defendant's sales. (Id. ¶ 21.) Jennifer Hayes, president and
10   owner of plaintiff, does not state in her declaration the percent
11   of plaintiff's sales based on the furniture,[3] but plaintiff
12   relies on eBay sales for 95 percent of plaintiff's revenues.
13   (Hayes Decl. ¶ 14.)

14   In opposition to the instant motion, defendant argues
15   that plaintiff learned of defendant's furniture manufacturer

---

17   [1]   Messenger states that she designed the following
18   furniture collections: (1) modern boxy sectional, (2) Capri
     sectional, (3) U-shaped sectional, (4) round sectional, and (5) a
     set known as "Set 5." (Messenger Decl. in Opp'n to DFI's Mot.
19   for a P.I. ("Messenger Decl. II") ¶¶ 3-15 (Docket No. 22).) The
     furniture is "geometric in design, look, and feel with boxy lines
20   and oversized, broad, and wide wicker surface embellishments over
     the back and arm elements." (Id. ¶ 2.) The frame of the
21   furniture is aluminum and wicker is "superimposed" on it. (Id.)

22   [2]   In reply, plaintiff has submitted a declaration from a
     sales representative for Anji that states that Anji was already
23   manufacturing two of the furniture collections before Anji
     entered into business with defendant in April of 2010. (Louise
24   Lin Decl. in Supp. of Pl. DFI's Reply to Def. Zen Path Opp'n to
     App. re: P.I. pursuant to F.R.C.P. 65 ¶ 5, Ex. 1 (Docket No.
25   27).)

26   [3]   Defendant has provided a declaration stating that
     listings for the plaintiff's furniture constituted 7.8 percent of
27   plaintiff's dynastyduo125 account listings on November 1, 2010.
     (Lintner Decl. in Opp'n to DFI's Mot. for a P.I. ¶ 5, Ex. 1
28   (Docket No. 20).)

"perhaps by underhanded means." (Zen Path's Mem. of P. & A. in
Opp'n to DFI's Mot. for P.I. ("Def.'s Opp'n") at 2:6-8 (Docket
No. 17).)  However, defendant has only made allegations in its
answer, affirmative defenses, and counterclaims relating to this
issue and has not provided sufficient evidence in opposition to
the instant motion.  (Docket No. 24.)  Nonetheless, defendant has
provided evidence that plaintiff used photographs obtained from
defendant's eBay listings when it contacted Anji in May of 2010
and asked Anji if it manufactured the furniture and subsequently
entered into contracts with Anji.  (Messenger Decl. II ¶¶ 18-19;
Chen & Wang Decls. in Opp'n to DFI's Mot. for P.I. ¶¶ 8-9, 12-16,
Exs. 4-7 (Docket No. 21).)

        In early June of 2010, Messenger emailed Hayes about
plaintiff's eBay listings. (Hayes Decl. ¶ 3, Exs. A-B.)
Messenger demanded that plaintiff cease use of certain
photographs and text because they belonged to defendant.
Moreover, Messenger demanded that plaintiff not sell the
furniture: "You are further intending to make copies of furniture
that I personally designed inch by inch without my permission.
My personally designed furniture belongs to us and we will pursue
our rights to the fullest extent of the law." (Hayes Decl. Ex.
A.)  Messenger also wrote: "We can prove that you have or are
intending to make copies of items I personally designed without
my permission." (Id.)  Messenger informed Hayes: "We have signed
up for the Ebay VERO program since you made it necessary and once
we turn in the information, it is very possible that action will
be taken against your Ebay account." (Id.)  In a later email,
Messenger wrote: "And most importantly: You should not be

producing goods that you know are copied from someone else's.  I have it in writing that you specifically asked for copies of my items.  I have your email asking for copies of my items to be made."  (Hayes Decl. Ex. B.)

Hayes states that plaintiff stopped using the photographs following her exchange of emails with Messenger in June of 2010.  (Hayes Decl. ¶ 3.)  Plaintiff refused to stop selling the furniture unless presented with proof of defendant's intellectual property rights in the furniture.  (<u>Id.</u>)  Hayes states that she and another employee were unable to independently locate a design patent for the furniture.  (<u>Id.</u>)

On August 27, 2010, defendant filed two copyright registration applications for photographs of the furniture and four copyright registration applications for the furniture.[4] (Banuelos Decl. in Supp. of Def. Zen Path's Mem. of P. & A. in Opp'n to Pl.'s Ex Parte App. re: P.I. for Order to Show Cause & Req. for TRO ("Banuelos Decl.") ¶¶ 2-8, Exs. A-F (Docket No. 1 Ex. 9).)  The applications identified the works as "sculpture/3-D artwork, Ornamental Design" and attached photographs of the furniture.[5]  (<u>Id.</u> Exs. A-F.)  The "completion/publication" date of the furniture ranged from August 15, 2009, to April 20, 2010. (<u>Id.</u>)  Defendant's counsel filed the applications on defendant's

_____

[4]   Defendant appears not to have applied for copyright registration of the set known as "Set 5."

[5]   The court decided to continue the TRO based on the records removed from state court.  Many of the copies of the black-and-white photographs of the furniture attached to the applications were of such bad quality that it was difficult to even discern the object in the photograph.  Defendant has since provided the court with good quality, color copies of the photographs attached to the copyright applications.

4

behalf and identified the author as Messenger. (Id.)

The United States Copyright Office ("USCO") refused to register the furniture.  (See Zen Path's Answer & Affirmative Defenses to Compl. for Damages, & Counterclaims ¶ 148, Ex. 30 (Docket No. 24).)  The USCO's November 4, 2010, letter refusing registration of the Capri sectional wicker furniture explained:

> Registration for the above work must be refused because it is a 'useful article' which does not contain any separable authorship needed to sustain a claim to copyright. . . .
> Because all of the elements of the work you deposited are either related to the utilitarian aspects or function, or are subsumed within the overall shape, contour, or configuration of the article, there is no physically or conceptually 'separable' authorship as such.

(Id. Ex. 30.)

Following the filing of the copyright applications, but before receipt of the refusals, defendant's counsel demanded that plaintiff cease sale of the furniture and related conduct[6] and attached the pending copyright applications in a September 8, 2010, letter. (Hayes Decl. Ex. C.)  On September 22, 2010, Messenger submitted notices of claimed copyright infringement to eBay: "[B]ased on the copyright applications that had been filed for certain [sic] of my furniture collections . . . , I notified eBay that I believed Plaintiff was offering for sale certain furniture collections that were within the scope of my copyrights, which had been applied for as of the end of August of

---

[6]   Related conduct included plaintiff stating "we are the factory" on its eBay listings. (Hayes Decl. in Supp. of DFI's App. re: P.I. pursuant to F.R.C.P. 65 ("Hayes Decl.") Ex. D (Docket No. 14); see also Nielsen Decl. in Opp'n to DFI's Mot. for P.I. ("Nielsen Decl.") ¶ 11, Ex. 23 (Docket No. 19).)

2010." (Messenger Decl. in Supp. of Def. Zen Path's Mem. of P. & A. in Opp'n to Pl.'s Ex Parte App. re: P.I. for Order to Show Cause & Req. for TRO ("Messenger Decl. I") ¶ 2 (Docket No. 1 Ex. 10).)

On September 22, 2010, eBay notified plaintiff that it terminated numerous listings of furniture on accounts named "elegantfurnishings" and "dynastyduo125" for copyright violations. (Hayes Decl. Exs. E-F.) As of September 22, 2010, 35 of plaintiff's listings had been terminated. (Id. ¶ 13.) Hayes states that for auctions that had already ended, "[u]nless DFI was contacted by the purchaser(s) on those sales, those sales and profits were lost forever." (Id. ¶ 12.) On the same day, eBay also notified plaintiff that it would be unable to list new items on its dynastyduo125 account for 7 days because of "a recent policy violation." (Id. Ex. D.) The email also notified plaintiff that its account could be suspended if additional violations were reported. (Id.) Plaintiff has not provided evidence about any selling restrictions, suspension, or termination as to the elegantfurnishings account.

Defendant continued to submit notices of claimed infringement to eBay, totaling 63, through September 30, 2010, the day before a hearing in state court on a temporary restraining order ("TRO"). (Id. ¶ 14; see Exs. G-M.) Hayes states that the 63 notices of claimed infringement caused plaintiff's "policy violation rating" to go from "high" to "very low" on one account and "high" to "low" on a second account. (Id. ¶ 14.) Hayes states in her declaration:

> If Defendant is not stopped from submitting repeated notices of claimed infringement when there is absolutely no basis to claim that DFI's auctions are infringing on Defendant's intellectual property rights, then eBay could very well permanently suspend DFI's accounts. If Defendant is not stopped from submitting repeated notices of claimed infringement when there is absolutely no basis to claim that DFI's auctions are infringing on Defendant's intellectual property rights, then DFI will lose prospective customers, goodwill, and its good reputation with customers and with eBay. If that occurs, then my entire business will cease to exist since I rely on eBay for 95% of the company's revenues. I will be out of work and forced to lay off DFI's employees.[7]

(Id. ¶ 16.)

According to Messenger, plaintiff's sales of the furniture have "substantially reduced" defendant's sales and forced it to lower the prices by approximately 20 to 30 percent "in order to compete with" plaintiff's prices. (Messenger Decl. II ¶ 21.) Messenger states that the price reduction "in order to compete was necessary to try to minimize our losses, but it has also eliminated a substantial portion of our profit margins on the furniture at issue." (Id.) Acknowledging that an expert is necessary to determine the correct amount, Messenger estimates: "Conservatively assuming a 25% profit margin, our actual lost profits may be approximately $125,000-$175,000 thus far." (Id. ¶

---

[7]     Defendant argues that before defendant notified eBay of claimed infringement plaintiff "had begun a systematic campaign of manipulating its own, already low" feedback rating on its elegantfurnishings account by selling e-books or "feigning the sale of" e-books "to persons DFI and Hayes knew, who would then leave multiple positive feedbacks on DFI's elegantfurnishings account." (Zen Path's Mem. of P. & A. in Opp'n to DFI's Mot. for a P.I. ("Zen Path's Opp'n") 4:10-18 (Docket No. 17).) Defendant argues that "[i]t appears that DFI's elegantfurnishings account was suspended or terminated in late October/early November of 2010 because of this feedback manipulation, and not because of Zen Path's take down notices." (Id.) To support this argument, defendant has only provided copies of the feedback that plaintiff received on its elegantfurnishings account. (Nielsen Decl. ¶ 11, Ex. 23 (Docket No. 19).)

7

22.)

In its Complaint, originally filed in state court, plaintiff asserts claims for (1) misrepresentation of intellectual property infringement in violation of 17 U.S.C. § 512(f) of the Digital Millennium Copyright Act ("DMCA"), (2) tortious interference with a contract, (3) tortious interference with prospective economic advantage, (4) a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, and (5) declaratory and injunctive relief.[8] (Docket No. 1 Ex. 1.)  On October 1, 2010, the state court granted plaintiff's motion for a TRO.  (Docket No. 1 Ex. 15.) Defendant removed the action to this court, and plaintiff requested that the court continue the TRO based on the filings in state court.  On October 21, 2010, the court granted plaintiff's request to continue the TRO.  (Docket No. 9.)  Plaintiff now seeks a preliminary injunction against defendant, enjoining defendant from (1) submitting any further notices of claimed infringement to eBay stating that any particular auction conducted by plaintiff violates defendant's intellectual property

---

[8]   Defendant has counterclaimed for (1) tortious interference with contractual relations, (2) tortious interference with prospective economic advantage, (3) negligent interference with prospective economic advantage, (4) a violation of DMCA, (5) federal unfair competition, (6) state unfair competition, (7) trade dress infringement, (8) false advertising, (9) common law passing off, (10) copyright infringement, (11) third party beneficiary contract, (12) fraud, (13) common law misappropriation, and (14) constructive trust.  (Zen Path's Answer & Affirmative Defenses to Compl. for Damages, & Counterclaims (Docket No. 24).)  Defendant's affirmative defenses are (1) failure to state a claim, (2) fraud, (3) unclean hands, (4) lack of causation, (5) good faith, (6) innocent intent, (7) intent to injure competition, (8) First Amendment, (9) no damages, (10) assumption of the risk, (11) intervening cause, and (12) adequate remedy at law.

1  rights and (2) further engaging in any action with eBay with the
2  intent of interfering with plaintiff's ability to perform or
3  transact business on eBay.

4  II.  <u>Discussion</u>

5       In the Ninth Circuit, "'serious questions going to the
6  merits' and a hardship balance that tips sharply towards the
7  plaintiff can support issuance of an injunction, so long as the
8  plaintiff also shows a likelihood of irreparable injury and that
9  the injunction is in the public interest." <u>Alliance for the Wild</u>
10 <u>Rockies v. Cottrell</u>, 622 F.3d 1045, 1053 (9th Cir. 2010).

11      A.  <u>Merits</u>

12      The DMCA provides that "[a]ny person who knowingly
13 materially misrepresents under this section . . . that material
14 or activity is infringing . . . shall be liable for any damages .
15 . . incurred by the alleged infringer . . . who is injured by
16 such misrepresentation, as the result of the service provider . .
17 . removing or disabling access to the material or activity
18 claimed to be infringing . . . ." 17 U.S.C. § 512(f); <u>see</u> <u>also</u>
19 <u>Dudnikov v. MGA Entm't, Inc.</u>, 410 F. Supp. 2d 1010, 1012 (D.
20 Colo. 2005) (treating a notice of claimed infringement to eBay as
21 an actionable notice under section 512(f), but finding that the
22 alleged copyright owner lacked subjective knowledge of the
23 misrepresentation); <u>UMG Recordings, Inc. v. Augusto</u> 558 F. Supp.
24 2d 1055, 1065 (C.D. Cal. 2008) (same).[9] Liability does not
25 extend to circumstances where "an unknowing mistake is made, even
26 if the copyright owner acted unreasonably in making the mistake.

27 ───────────────

28  [9]   Defendant does not dispute that section 512(f) applies
    to a notice of claimed infringement to eBay.

1  Rather, there must be a demonstration of some actual knowledge of

2  misrepresentation on the part of the copyright owner." Rossi v.

3  Motion Picture Ass'n of Am. Inc., 391 F.3d 1000, 1005 (9th Cir.

4  2004) (internal citation omitted).

5         To succeed on its DMCA claim, plaintiff must first

6  establish that defendant falsely misrepresented a claim of

7  copyright infringement. See 17 U.S.C. § 512(f). To establish

8  copyright infringement, an alleged owner must show (1) ownership

9  of the copyright, and (2) copying of the protected expression by

10 the defendant. Sun Microsystems, Inc. v. Microsoft Corp., 188

11 F.3d 1115, 1119 (9th Cir. 1999). A valid certificate of

12 copyright registration creates a presumption of originality of

13 the work for five years from the date of registration. Swirksy

14 v. Carey, 376 F.3d 841, 851 (9th Cir. 2004).[10] "[T]his

15 presumption is fairly easy to rebut because the Copyright Office

16 tends toward cursory issuance of registrations." Universal

17 Furniture Int'l, Inc. v. Collezione Europa USA, Inc., Nos.

18 07-2180, 09-1437, 2010 WL 3278404, at *7 (4th Cir. Aug. 20, 2010)

19 [hereinafter Universal II] (per curiam). "[T]he presumption of

20 validity may be rebutted where other evidence in the record casts

21 doubt on the question," such as "evidence that the work had been

22 copied from the public domain or by evidence that the work was a

23 non-copyrightable utilitarian article." Fonar Corp. v. Domenick,

24 105 F.3d 99, 104 (2d Cir. 1997) (internal citations and quotation

25

26         [10]   In the Ninth Circuit, an applicant may bring an
   infringement claim upon filing for registration. Cosmetic Ideas,
27 Inc. v. IAC/Interactivecorp., 606 F.3d 612, 621 (9th Cir. 2010).

28

                                   10

1 marks omitted).

2        The Copyright Act excludes from copyright protection
3 any "useful article," defined as an article having "an intrinsic
4 utilitarian function that is not merely to portray the appearance
5 of the article or to convey information."  17 U.S.C. § 101.  The
6 Act extends copyright protection to "pictorial, graphic, and
7 sculptural works."  Id.  The Act provides that "the design of a
8 useful article . . . shall be considered a pictorial, graphic, or
9 sculptural work only if, and only to the extent that, such design
10 incorporates pictorial, graphic, or sculptural features that can
11 be identified separately from, and are capable of existing
12 independently of, the utilitarian aspects of the article."  Id.
13 The courts have recognized two types of separability: physical
14 and conceptual.  Leicester v. Warner Bros., 232 F.3d 1212, 1219
15 n.3 (9th Cir. 2000).  Physical separability means that "a
16 'pictorial, graphic or sculptural feature incorporated into the
17 design of a useful article . . . can be physically separated from
18 the article without impairing the article's utility and if, once
19 separated, it can stand alone as a work of art traditionally
20 conceived.'"  Id. (quoting Paul Goldstein, Copyright § 2.5.3, at
21 2:64 (1999)) (alteration in original).  Conceptual separability
22 means that "a pictorial, graphic or sculptural feature 'can stand
23 on its own as a work of art traditionally conceived, and . . .
24 the useful article in which it is embodied would be equally
25 useful without it.'"  Id. (quoting Goldstein, Copyright § 2.5.3,
26 at 2:67) (alteration in original).

27        As a general rule, a "purely utilitarian article--such
28 as bedroom furniture--receives no protection."  Amini Innovation

1  Corp. v. Anthony Cal., Inc., 439 F.3d 1365, 1369 (Fed. Cir. 2006)

2  (applying Ninth Circuit copyright law and upholding copyright

3  protection of ornamental carvings on furniture, not the furniture

4  as a whole).  Nonetheless, "if the shape of a utilitarian article

5  incorporates features, such as artistic sculpture, carving, or

6  pictorial representation, which can be identified separately and

7  are capable of existence independently as a work of art, such

8  features will be eligible for registration."  Fabrica Inc. v. El

9  Dorado Corp., 697 F.2d 890, 893 (9th Cir. 1983); see also

10  Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.,

11  74 F.3d 488, 493 (4th Cir. 1996) ("Thus, the industrial design of

12  a unique, aesthetically pleasing chair cannot be separated from

13  the chair's utilitarian function and, therefore, is not subject

14  to copyright protection.  But the design of a statue portraying a

15  dancer, created merely for its expressive form, continues to be

16  copyrightable even when it has been included as the base of a

17  lamp which is utilitarian."); Universal II, 2010 WL 3278404, at

18  *7 (despite earlier upholding of the denial of a preliminary

19  injunction, finding the ornamental design on the furniture to be

20  original and conceptually distinct from the utilitarian aspects

21  of the furniture); Universal Furniture Int'l., Inc. v. Collezione

22  Europa USA, Inc., 196 Fed. App'x 166, 172 (4th Cir. 2006)

23  [hereinafter Universal I] (upholding the denial of a preliminary

24  injunction and expressing concern that finding the designs

25  copyrightable would "potentially enlarge the law of copyright

26  beyond its intended borders by extending copyright protection to

27  two entire furniture collections based on their 'ornate, opulent'

28  look alone").

Here, the court has already found that it is likely that defendant's furniture will not be entitled to copyright protection.  Indeed, in the intervening time, the USCO denied the copyright registration applications for the furniture.  The industrial design of the furniture clearly may not be copyrighted.  Defendant has not sufficiently identified any aspect of the furniture that physically or conceptually could stand alone as a piece of art traditionally conceived.  Leicester, 232 F.3d at 1219 n.3.

In addition to showing that its furniture was not infringing, plaintiff must show that defendant had subjective knowledge of the misrepresentation of infringement to succeed on its claim under section 512(f).  Rossi, 391 F.3d at 1005.  Based on the few cases that have applied section 512(f) to notices of claimed infringement to eBay, this subjective knowledge requirement appears to be a difficult hurdle for plaintiffs.  See Dudnikov, 410 F. Supp. 2d at 1012; UMG Recordings, Inc., 558 F. Supp. 2d at 1065.

The fact that a party has filed a copyright registration application, see Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 621 (9th Cir. 2010), does not necessarily mean that it was honest in notifying eBay of claimed infringement.  When Hayes and Messenger exchanged emails in June of 2010, Hayes asked Messenger for proof of her intellectual property rights in the furniture and Messenger failed to produce it.  Nearly three months passed until defendant filed the copyright registration applications.  The copyright application described the work as a sculpture/3-D artwork and an ornamental

13

1   design, yet the photographs clearly show outdoor wicker patio

2   furniture with solid-colored cushions and brown wicker.

3   (Banuelos Decl. Ex. A-D.)

4        Defendant was never able to point to the specific

5   feature of the furniture that could be copyrighted when asked by

6   plaintiff, yet defendant filed 63 notices of claimed copyright

7   infringement.  Defendant has never been able to point to what can

8   be copyrighted.  In court, when finally pressed, defendant's

9   counsel referred to the design of the wicker.  The court cannot

10  conclude that defendant thought it had a copyright in the design

11  of the wicker when it notified eBay.  Further, even if it could

12  be argued that defendant initially believed it had a valid

13  copyright claim, it is substantially more implausible to argue

14  that defendant could continue to entertain such a belief now that

15  its claim has been rejected by both the USCO and this court.  At

16  a minimum, there are serious questions going to the merits.

17        B.   <u>Irreparable Harm</u>

18        Mere monetary harm "will not usually support injunctive

19  relief."  <u>Am. Trucking Ass'ns</u>, 559 F.3d at 1057; <u>see also</u> <u>Cal.</u>

20  <u>Pharmacists Ass'n v. Maxwell-Jolly</u>, 563 F.3d 847, 851-52 (9th

21  Cir. 2009).  However, intangible injuries that are incapable of

22  measurement, like reputation or goodwill, may constitute

23  irreparable harm.  <u>Rent-A-Center, Inc. v. Canyon Television &</u>

24  <u>Appliance Rental, Inc.</u>, 944 F.2d 597, 603 (9th Cir. 1991).  The

25  threatened loss of prospective customers also constitutes

26  irreparable harm.  <u>Stuhlbarg Int'l Sales Co. v. John D. Brush &</u>

27  <u>Co.</u>, 240 F.3d 832, 841 (9th Cir. 2001) (trademark case);

28  <u>Super-Krete Int'l, Inc. v. Sadleir</u>, No. CV 10-01966, 2010 WL

1688533, at *8 (C.D. Cal. Apr. 22, 2010) ("Even without this
presumption [of irreparable harm in a trademark case], Plaintiff
has demonstrated irreparable injury based on the threatened loss
of prospective customers who would be diverted away from its
website should it be unable to gain control over the domain
name."). The harm must be "likely" and thus "merely speculative"
harm will not support injunctive relief. <u>Am. Trucking Ass'ns</u>,
559 F.3d at 1058.

Here, questions remain as to eBay's likely responses
upon receipt of notices of claimed infringement. Possible
responses include termination of a listing, decrease in policy
violation ratings, temporary restrictions on selling, suspension
of an account, or termination of an account. (<u>See</u> Hayes Decl. ¶¶
8-11; Messenger Decl. I ¶ 3, Ex. A.) In <u>Dudnikov v. Chalk &</u>
<u>Vermilion Fine Arts, Inc.</u>, 514 F.3d 1063, 1069 (10th Cir. 2008),
the Tenth Circuit described in dicta eBay's policies as they
existed in 2008:

> Under this [Verified Rights Owner ("VeRO")] program, eBay
> will automatically terminate an ongoing auction when it
> receives a notice of claimed infringement ("NOCI") from
> a VeRO member stating, under penalty of perjury, that it
> has a good-faith belief that an item up for auction
> infringes its copyright. The complaint, if unresolved,
> can also result in the suspension of the seller's
> account. Under the VeRO program, a targeted seller may
> file a "counter notice" with eBay contesting the validity
> of the copyright claim. Upon receipt of such a filing,
> eBay notifies the initial complainant that it will
> reinstate the contested auction in 10 days unless it is
> notified that there is pending legal action seeking to
> adjudicate the parties' rights. If the complaining party
> does initiate legal proceedings within 10 days, eBay will
> continue to suppress the contested auction pending the
> outcome of litigation.

<u>Id.</u> Based on the declarations submitted by the parties, the
court concludes that, if defendant continues to submit notices of

15

1  copyright infringement to eBay, it is likely that eBay would

2  terminate listings, temporarily restrict plaintiff from selling

3  on one or both of its accounts, or suspend or terminate

4  plaintiff's accounts.  eBay's responses to defendant's notices

5  would likely deter prospective customers and adversely affect

6  plaintiff's reputation and goodwill on a web site from which it

7  generates 95 percent of its revenues.  See Rent-A-Center, Inc.,

8  944 F.2d at 603; Stuhlbarg Int'l Sales Co., 240 F.3d at 841.

9  Plaintiff's accounts' policy violation ratings would also likely

10 decrease if plaintiff continues to sell the furniture and

11 defendant continues to submit notices to eBay.  The decrease in

12 the policy violation ratings would also cause irreparable harm.

13      The court is unpersuaded by defendant's argument that

14 the plaintiff would not be irreparably harmed because eBay

15 permits counter-notices that would restore a listing if the

16 alleged owner does not commence a civil action within a given

17 period.  Even if plaintiff files counter-notices to every notice

18 submitted by defendant throughout the course of this action,

19 plaintiff would likely have listings terminated, at least

20 temporarily, and experience a decrease in policy violation

21 ratings, temporary restrictions on selling, suspension of an

22 account, or termination of an account.  Moreover, now that

23 plaintiff has counterclaimed for copyright infringement, eBay

24 would not necessarily restore a terminated listing based on a

25 claim of copyright infringement, even if plaintiff filed a

26 counter-notice.  Accordingly, the court finds a likelihood of

27 irreparable harm to plaintiff.

28      C.   Balance of Equities

16

1          "A preliminary injunction is an extraordinary remedy
2   never awarded as of right." <u>Winter</u>, 129 S. Ct. at 376.  "In each
3   case, a court must balance the competing claims of injury and
4   must consider the effect on each party of the granting or
5   withholding of the requested relief." <u>Amoco Prod. Co. v. Vill.</u>
6   <u>of Gambell, Alaska</u>, 480 U.S. 531, 542 (1987).

7          eBay's likely responses to numerous notices from
8   defendant if plaintiff continues to sell the furniture would
9   likely cause plaintiff to lose prospective customers, goodwill,
10  and its reputation.  Defendant claims that the furniture at issue
11  constitutes 75 to 80 percent of defendant's sales and that
12  plaintiff's eBay listings have "substantially reduced" those
13  sales.  (Messenger Decl. II ¶ 7.)  The court, nonetheless, finds
14  the balance of equities tips sharply in plaintiff's favor because
15  of the irreparable harm that would result from eBay's likely
16  responses.  <u>Cf.</u> <u>Biosafe-One, Inc. v. Hawks</u>, 524 F. Supp. 2d 452,
17  468 (S.D.N.Y. 2007) ("Furthermore, while it is true that if
18  defendants' website is ordered restored their harm will be
19  greatly reduced, if plaintiffs continue to send DMCA notices
20  defendants will be burdened, financially and otherwise, with
21  arranging for alternative companies to host their website outside
22  the country.  A preliminary injunction barring plaintiffs from
23  sending additional DMCA notices, absent court approval, however,
24  would impose little or no burden on plaintiffs.").

25       D.   <u>Public Interest</u>

26          "In exercising their sound discretion, courts of equity
27  should pay particular regard for the public consequences in
28  employing the extraordinary remedy of injunction." <u>Weinberger v.</u>

17

1  <u>Romero-Barcelo</u>, 456 U.S. 305, 312 (1982).  "The public interest

2  analysis for the issuance of a preliminary injunction requires

3  [the court] to consider 'whether there exists some critical

4  public interest that would be injured by the grant of preliminary

5  relief.'"  <u>Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly</u>,

6  572 F.3d 644, 659 (9th Cir. 2009) (quoting <u>Hybritech Inc. v.</u>

7  <u>Abbott Lab.</u>, 849 F.2d 1446, 1458 (Fed. Cir. 1988)).

8          Here, as this court observed in its Order granting the

9  request to continue the TRO, the public interest is in fact

10 benefitted by granting a preliminary injunction, because absent

11 eBay's policies, designed to avoid eBay's liability for

12 intellectual property infringement, it would be the claimed

13 copyright holder who would bear the burden of proving the

14 copyright infringement.  <u>See, e.g.</u>, <u>Universal I</u>, 196 Fed. App'x

15 at 172.  That burden is essentially shifted under eBay's

16 policies.  To withhold a preliminary injunction would allow

17 anyone to effectively shut down a competitor's business on eBay

18 simply by filing numerous notices that the seller's products

19 allegedly infringe on the complaining party's copyright.[11]

20 _____

21      [11]    Defendant argues that the burden is not shifted to the
   alleged infringer because eBay permits a counter-notice, which
22 would restore a terminated listing absent commencement of a civil
   action by the alleged owner.  (Zen Path Opp'n at 15:14-16:11.)
23      Based on the record evidence of eBay's policies, eBay's
   policies still shift the burden even in light of the availability
24 of a counter-notice.  Even if a counter-notice is allowed, (1) a
   notice of claimed infringement would still terminate the listing,
25 at least temporarily, and (2) a notice of claimed infringement
   would likely cause eBay to temporarily restrict the alleged
26 infringer's ability to sell.  Moreover, even though an alleged
   owner must commence a civil action to maintain the termination of
27 the listing, the alleged owner would not have to obtain a
   restraining order from a court because eBay would maintain the
28 termination.  The record also suggests that numerous notices of
   claimed infringement, even if rebutted by counter-notices, would

1    Plaintiff has shown that there are serious questions

2 going to the merits and a likelihood of irreparable harm.  The

3 balance of equities tips sharply in plaintiff's favor and the

4 public interest would be benefitted by a preliminary injunction.

5 Accordingly, the court will grant plaintiff's motion for a

6 preliminary injunction.[12]

7    Rule 65 of the Federal Rules of Civil Procedure

8 requires that "[e]very order granting an injunction . . . shall

9 set forth the reasons for its issuance; shall be specific in

10 terms; [and] shall describe in reasonable detail . . . the act or

11 acts sought to be restrained."  Fed. R. Civ. P. 65(d).  Generally,

12 "an injunction must be narrowly tailored to remedy only the

13 specific harms shown by the plaintiffs rather than to enjoin all

14 possible breaches of the law."  Iconix, Inc. v. Tokuda, 457 F.

15 Supp. 2d 969, 998-1002 (N.D. Cal. 2006).  Here, plaintiff

16 requests that the court enjoin defendant from (1) submitting

17 notices of claimed infringement to eBay stating that any auction

18

19 ─────────────

negatively affect an alleged infringer's policy violation rating,

20 which could lead to eBay suspending or terminating an account.

21    [12]    The court declines to find that plaintiff is barred
from a preliminary injunction based on the unclean hands
22 doctrine.  The "unclean hands" doctrine "closes the door of a
court of equity to one tainted with inequitableness or bad faith
23 relative to the matter in which he seeks relief, however improper
may have been the behavior of the defendant."  Precision
24 Instrument Mfg. Co. v. Automotive Maint. Mach. Co., 324 U.S. 806,
814 (1945).  The thrust of defendant's unclean hands argument is
25 that "apparently" plaintiff learned of defendant's Chinese
manufacturer through "underhanded means."  (Zen Path Opp'n at
26 16:26-27.)  At this stage, the allegation is unsupported.
Defendant has presented evidence that plaintiff used defendant's
27 photographs when it contacted and later contracted with Anji and
that plaintiff has stated "we are the factory" in its eBay
28 listings.  Without more, the court declines to exercise its
discretion and bar plaintiff from equitable relief.

19

1   conducted by plaintiff violates <u>any</u> of defendant's intellectual

2   property rights and (2) engaging in <u>any</u> action with eBay with the

3   intent of interfering with plaintiff's ability to perform or

4   transact business on eBay.   The proposed injunction would enjoin

5   defendant from notifying eBay of infringement of intellectual

6   property rights in non-furniture products; infringement of other

7   intellectual property rights, other than copyright, in the

8   furniture; infringement of intellectual property rights in

9   defendant's text and photographs; and violations of eBay's

10  policies.   The court declines to issue such a broad injunction

11  and instead limits the injunction to the complained-of conduct.

12  The court will enjoin defendant from notifying eBay that

13  defendant has copyrights in the furniture and that plaintiff's

14  sales violate these copyrights.

15          E.   <u>Bond</u>

16          As a condition for issuing a preliminary injunction,

17  the court must require that plaintiff post security in an amount

18  which the court deems proper.   Fed. R. Civ. P. 65(c).

19  "The Ninth Circuit has no steadfast rule as to the amount of a

20  bond as a result of the issuance of a preliminary injunction."

21  <u>Garrett v. City of Escondido</u>, 465 F. Supp. 2d 1043, 1059 (S.D.

22  Cal. 2006).   "Generally, the bond amount should be sufficient 'to

23  protect [the] adversary from loss in the event that future

24  proceedings prove that the injunction issued wrongfully.'" <u>Id.</u>

25  (quoting <u>Edgar v. MITE Corp.</u>, 457 U.S. 624, 649 (1982)).

26          Defendant proposes a bond of $500,000.00 because

27  defendant estimates its lost profits over the last six months to

28  be $125,000 to $175,000 and defendant estimates that the action

1   will last 18 to 24 months.  However, defendant relies on

2   Messenger's estimate, who admits that she cannot quantify the

3   losses sustained over the last six months without the help of an

4   expert.  (Messenger Decl. II ¶ 22.)  Plaintiff proposes the bond

5   be set at zero, or some other nominal amount, such as $500.00,

6   because no harm will befall defendant.  However, to the extent it

7   should later be determined that the injunction was issued in

8   error, defendant will have been harmed by its inability to notify

9   eBay.  At the hearing on December 20, 2010, plaintiff's counsel

10  represented to the court that plaintiff's estimated annual

11  profits from the furniture at issue are $200,000.00.  Assuming,

12  without deciding, that a fair royalty would be 50 percent of the

13  profits, the court will set bond in the amount of $100,000.00.

14       IT IS THEREFORE ORDERED that plaintiff's motion for a

15  preliminary injunction be, and the same hereby is, GRANTED.

16  Defendant is therefore enjoined from notifying eBay that

17  defendant has copyrights in the wicker patio furniture offered

18  for sale by plaintiff and that plaintiff's sales violate those

19  copyrights.  This preliminary injunction shall take effect

20  immediately upon the posting with the Clerk of the Court a bond

21  in the amount of $100,000.00.

22  DATE:  December 23, 2010

23

24  _____

25  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

26

27

28